UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 41, filed on September 26, 2022)

## I.  INTRODUCTION

On March 4, 2021, Olive/Hill Street Partners, LLC ("Olive/Hill") filed suit against SPC Owner LLC ("SPC"). Dkt. 1 ("Compl."). Both parties are real estate investors who entered into a purchase-and-sale agreement ("PSA") on February 27, 2020, pursuant to which SPC agreed to purchase downtown Los Angeles commercial real estate from Olive/Hill located at 133 Olive Street, 1139 South Hill Street, 1149 South Hill Street, and 150 West 12th Street (the "Buildings"). Id. By letter dated April 23, 2020, defendant notified plaintiff that it was terminating the transaction after objecting to plaintiff's delivery of tenant estoppel certificates as required under the PSA in advance of the closing date. Id. Plaintiff asserts two claims for relief: (1) breach of contract in the form of contractual liquidated damages, or in the alternative, actual damages; and (2) declaratory relief that defendant's refusal to consummate the parties' purchase deal constitutes a default under the PSA entitling plaintiff to defendant's earnest-money deposit it has refused to release. Id.

On May 26, 2021, SPC answered Olive/Hill's complaint and filed a counterclaim against Olive/Hill, asserting three claims for relief: (1) breach of contract for failure to deliver acceptable tenant estoppel certificates; (2) breach of the implied covenant of good faith and fair dealing for delivering non-compliant tenant estoppels in bad faith; and (3) declaratory relief that SPC is entitled to the return of its deposit. Dkt. 11 ("Counterclaim").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

On September 26, 2022, plaintiff filed a motion for summary judgment as to all of its claims and all of defendant's affirmative defenses and counterclaims. Dkt. 41 ("Mot."). On October 24, 2022, defendant filed its opposition. Dkt. 49 ("Opp."). On November 7, 2022, plaintiff filed a reply. Dkt. 53 ("Reply").

On November 21, 2022, the Court held a hearing. After the hearing, the Court directed plaintiff to file additional evidence relating to the issue of the estoppel certificate delivery. Dkt 69. Plaintiff filed its supplemental material on December 9, 2022. Dkt. 70.

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.[1]

### A.   The parties enter into a purchase-and-sale agreement

Plaintiff owns the Buildings located on Olive and Hill Streets in Los Angeles, California. See Dkt. 41-3, ¶ 1 ("Statement of Undisputed Facts" or "SUF").

Olive/Hill and SPC entered into an agreement on February 27, 2020 (the "Effective Date") whereby SPC agreed to purchase the Buildings from Olive/Hill for $365 million. Id. ¶ 2. Section 4.1 of the agreement ("PSA") provides that the sale was to close within 60 days of the Effective Date—i.e., by April 27, 2020 (the "Scheduled Closing Date")—subject to extension under specified extensions. Dkt. 43-1 ("Rutherford Decl."), Ex. A ("PSA").

---

[1] The parties assert numerous evidentiary objections to the other side's evidence. Dkts. 52; 53-1. "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." Capitol Records, LLC v. BlueBeat, Inc., 765 F. Supp. 2d 1198, 1200 (C.D. Cal. 2010).
To the extent that the Court relies on objected-to evidence, it has considered and **OVERRULED** the parties' evidentiary objections. Evidence not considered by the Court is not addressed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

SPC deposited $10 million into escrow as an earnest money deposit towards the purchase price (the "Deposit"). SUF, ¶ 4. Section 6.1 of the PSA provides that if the sale of the Buildings does not occur due to SPC's default, the Deposit is be paid to Olive/Hill as liquidated damages. See PSA, § 6.1.

One of the conditions precedent to closing was the delivery to SPC of "acceptable" estoppels from the University of Southern California ("USC"), WeWork and other tenants that, when combined with USC and WeWork, occupied an aggregate of no less than eighty percent of the leased square footage of the Buildings no later than two business days before the Scheduled Closing Date—i.e., on or before April 23, 2020 (the "estoppel delivery requirement"). SUF, ¶ 6. There were 832,777 square feet of leased space in the Buildings at the time, eighty percent of which equals 666,221.6 square feet. Id. ¶ 8.

Section 4.7(d) of the PSA outlines the parameters of the estoppel delivery requirement. Specifically, it provides that an estoppel certificate is "acceptable" under the agreement if it:

> (i) does not disclose any terms that are materially inconsistent with the provisions of the applicable lease, the representations and/or warranties of Seller contained in this Agreement, the Lease Exhibit and/or the rent roll attached hereto as Exhibit Q, (ii) does not allege a default of either party under the applicable lease and/or a rent offset, a rent dispute or any other material monetary amount owed to the tenant by landlord, (iii) confirms that the Lease is in full force and effect, (iv) is dated no more than thirty (30) days prior to the Closing Date, and (v) is in the form attached hereto as Exhibit K or in the form, if any, prescribed by such Lease.

PSA, § 4.7(d).

> Section 4.7(d) further establishes that, if on the Closing Date:
>
> the Estoppel Delivery Requirement is not satisfied . . . then provided that Seller shall have been using commercially reasonable efforts to obtain the Tenant Estoppels (as required by Section 5.4(b) below), Seller shall not be in default hereunder and this Agreement shall terminate (and no party hereto shall have any further obligation in connection herewith except under those

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

> provisions that expressly survive a termination of this Agreement); provided, however, that either Seller or Purchaser shall have the right to extend the period for satisfying the condition set forth in this Section 4.7(d) (and, accordingly, the Closing Date) for the Extension Period in order to satisfy such condition.

Id.

Section 5.4(b) of the PSA provides that Olive/Hill:

> shall, no later than twenty-five (25) days after the Effective Date, prepare and submit to each tenant under a Lease, and thereafter use commercially reasonable efforts (but without obligation to incur any cost or expense) to obtain and deliver to Purchaser prior to closing, written estoppel certificates as provided in Section 4.7(d). Seller shall deliver to Purchaser a copy [sic] any estoppel certificate (draft or otherwise) and/or Tenant Estoppel within two (2) Business Days after Seller's receipt thereof from or on behalf of any tenant under a Lease.

Id., §5.4(b).

Section 4.9(a) of the PSA provides that "if any condition set forth in Section 4.7 above is not satisfied as of the Closing Date, Purchaser may (a) waive any such condition . . . or (b) notify Seller of Purchaser's election to terminate this Agreement and receive a return of the Earnest Money from Escrow Agent . . . ." Id., § 4.9(a).

Finally, an "exemplar" lease between Olive/Hill and its tenants provides that "Tenant shall pay, without prior notice or demand, to Landlord or Landlord's agent . . . base rent ("Base Rent") . . . payable in equal monthly installments . . . on or before the first day of each and every calendar month during the Lease Term, without any setoff or deduction whatsoever." Dkt. 50-10 ("Exemplar Lease"). The exemplar lease defines one possible event of default as "any failure by Tenant to pay any Rent[2] or any other charge

---

[2] The exemplar lease defines "Rent" to include "Base Rent" and "Additional Rent," which comprises a tenant's share of property operating expenses and taxes and also due the same day as the base rent. See Dkt. 50-10, § 4.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

required to be paid under this Lease, or any Part thereof, when due unless such failure is cured within three (3) days after notice." Id. § 19.1.1.

**B.     Olive/Hill's delivery of the estoppel certificates**

As stated above, the initial Closing Date for the transaction was April 27, 2020. Olive/Hill delivered three separate sets of estoppel certificates to SPC, one on March 23, 2020, the second on April 16, 2020, and the final set on April 23, 2020. The first set included a pre-printed date of March 23, 2020, at the top of each estoppel certificate, to which SPC objected for not reflecting the actual dates on which the tenants signed the certificates, and also because March 23, 2020 was not within thirty days of the Closing Date as required by Section 4.7(d) of the PSA. See Dkt. 50-5. On April 16, 2020, Olive/Hill responded that it would provide "more current Estoppel[s]." See Dkt. 50-6.

On April 16, 2020, Olive/Hill provided SPC with a second set of estoppel certificates, which included a pre-printed date of March 31, 2020. SPC objected to this second set on the basis that this pre-printed date of March 31, 2020 did not reflect the fact that plaintiff sent out the second set in mid-April for the tenants to sign and return. SPC requested that "each estoppel will need to be dated on or after the date that the most recent request for such estoppel is made to the tenant." See Dkt. 50-8.

On April 20, 2020, plaintiff sent out a third set of estoppel certificates to the tenants, with an "April [ ], 2020" date to be filled in by the tenants. See Dkt. 43 ("Rutherford Decl."), ¶ 22. Additionally, plaintiff notified defendant that it would exercise its right under Section 4.7(d) of the PSA to extend the Closing Date to May 6, 2020, for the purpose of satisfying the estoppel delivery requirement.[3] Id.

Between April 22–23, 2020, plaintiff delivered to defendant the third set of estoppel certificates for 25 out of 38 tenants. On April 23, 2020, around 6:08pm, SPC emailed plaintiff a chart showing the status of the estoppel certificates. Of the third set of

---

[3] On April 22, 2020, SPC objected to Olive/Hills extension of the Closing Date on the basis that plaintiff had not been using "commercially reasonable efforts" as required by Sections 4.7(d) and 5.4(b) of the PSA. See Rutherford Decl., ¶ 23. However, SPC now states that the "extent to which Olive/Hill exercised 'commercially reasonable efforts' to comply with the Estoppel Delivery Requirement and, in turn, validly extended the Closing Date is not at issue in the instant Motion." Opp. at 13 n. 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

certificates, defendant deemed 11 of them to be acceptable under the requirements of the PSA. See Rutherford Decl., Ex. K. However, defendant objected to the estoppel certificates for 13 of the tenants on the basis that the certificates indicated that those tenants were in arrearages on rent payments and thereby alleged an event of default under the applicable leases. See Dkt. 50 ("Goldberg Decl."), ¶ 37.

On April 23, 2020, around 7:08pm, plaintiff emailed defendant, "Attached please find the executed Estoppel documents for the University of Southern California. We are now at approximately 85% collected.[4] We will continue to forward the additional estoppels as they come in. My team will break this pdf down in to the three (3) estoppels and will upload each of them to the Box as a separate file." See Rutherford Decl., Ex. N. Defendant responded in an email on April 23, 2020, around 7:02pm that the "estoppel for USC's November 17, 2010 lease is not acceptable since it does not certify as to when additional rent has been paid through." Id.

Meanwhile, plaintiff represented to defendants in an April 23, 2020 email sent around 8:39pm that certain identified tenants were in fact up to date on their rent payments. Moreover, plaintiff wrote in that email that "we wanted to point out that many of your questions about additional rent payments have been answered previously on the attached Status of AR on Estoppels as of 04.17.2020 document that was sent to your team on Monday." See Rutherford Decl., Ex. J.

Notwithstanding plaintiff's supplemental disclosures described above, on April 24, 2020, around 2:30am, defendant emailed plaintiff a letter dated April 23, 2020 in which SPC terminated the PSA on the grounds that: (a) Olive/Hill had purportedly failed to satisfy the Estoppel Delivery Requirement; and (b) Olive/Hill purportedly had breached a representation in the PSA that no tenants were in arrears at the time the PSA was signed. SUF, ¶18; Rutherford Decl., Ex. DD.

On April 24, 2020, around 6:37pm, plaintiff delivered an updated version of the estoppel certificate for the USC 2010 lease that now indicated that the tenant was current on rent payments. See id., Ex. N.

---

[4] Both during the time of the parties' dealings in 2020, and throughout litigation, plaintiff has maintained that it submitted acceptable estoppel certificates, so its 85% calculation in this April 23, 2020 email is premised on this basis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

On April 24, 2020, Olive/Hill told SPC that SPC's termination of the PSA was improper and that Olive/Hill was not waiving any of its rights or remedies at law or in equity, all of which it expressly reserved. SUF, ¶ 23.

April 27, 2022 was the written Closing Date under the PSA, although as noted above plaintiff attempted to extend the Closing Date to May 6, 2020.

On April 28, 2020, plaintiff sent defendant a revised estoppel certificate for ABM Industry and Girl Scouts, both of which reflected that all rent and sums been paid through April 30, 2020. Dkts. 70-5, 70-6.

On April 29, 2020, plaintiff sent defendant a revised estoppel certificate for the City of LA, reflecting that all rent and sums had been paid through April 30, 2020. Dkt. 70-7.

SPC never tendered the purchase price or otherwise consummated the purchase of the Buildings. SUF, ¶ 24. SPC has objected to the escrow agent's release of the Deposit to Olive/Hill. Id. ¶ 25.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631, 631 n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT

The parties' briefing for the instant motion centers on whether the estoppel certificates delivered to defendant by plaintiff on April 23, 2020, were considered "acceptable" under the PSA and thereby satisfied the condition precedent to closing. Their arguments are primarily directed to the contract interpretation question of whether certain estoppel certificates alleged "events of default" under the applicable lease by indicating certain tenants were in arrears on rent payments. Additionally, the parties and the Court have identified potential material issues of fact, including whether estoppel certificates should be considered not "acceptable" under the PSA for containing a pre-printed date, whether plaintiff exercised "commercially reasonably efforts" to enable it to properly invoke an extension of the Closing Date, and whether plaintiff's representations of tenants becoming current on rent payments can be considered substantial compliance with the PSA.

The Court addresses each issue in turn.

### A. Whether estoppel certificates alleged an "event of default" by indicating a tenant was in arrears on rent payment

Plaintiff argues that the estoppel certificates did not allege any events of default under the applicable leases between it and its tenants, given that (1) the estoppel certificates on their face disclaimed any existence of a default; and (2) the fact that certain tenants were behind in rent at the time they signed the certificates does not allege events of default, because the applicable leases define an event of default for non-payment of rent to occur only after notice and failure to cure. Mot. at 13–14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

In opposition, defendant argues that the definition of default under the applicable leases is properly interpreted to mean that "a tenant's failure to pay rent in a timely fashion, in and of itself, constituted" a default unless a tenant was given notice and took the opportunity to cure the default. Opp. at 18–19. Accordingly, notwithstanding the boilerplate provision in the certificates that there was no default, defendant contends that because signed certificates reflected the fact that certain tenants were not up to date on their rent payments, plaintiff failed to deliver "acceptable" tenant estoppel certificates for 80% of the square footage of the property. Id. at 19–21.

The Court agrees with defendant that the definition of event of default lease under the "exemplar lease" is clear that default occurs upon the tenant's failure in and of itself to pay rent in a timely fashion, subject to the possibility that the tenant could cure the default by paying rent within the specified time. See Exemplar Lease, § 19.1.1 ("any failure by Tenant to pay any Rent or any other charge required to be paid under this Lease, or any Part thereof, *when due* unless such failure is cured within three (3) days after notice") (emphasis added).

More importantly, however, there appear to be several genuine disputes of material fact that must be resolved by a jury. The Court next turns to each issue.

### B. Whether an estoppel certificate containing a pre-printed date is considered acceptable

The parties do not address in their briefing whether defendant improperly objected to the second set of certificates delivered by April 17, 2020, which were pre-printed and "backdated" to March 31, 2020. At the time of defendant's objection to that set, it stated that it "believe[s] that it is customary industry practice to provide the estoppel to the tenant undated." Dkt. 50-8. But the PSA itself did not require that, and whether it was "customary industry practice" to do so is a triable issue of fact that could ultimately support plaintiff's satisfaction of the estoppel delivery requirement. In other words, to the extent that defendant objected to a particular estoppel certificate only on the basis that it contained a pre-printed date, it is possible given customary industry practices that it was unreasonable for defendant to object on that ground, and such certificate should be deemed acceptable under the PSA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

Here, it appears from the record that defendant only objected to the estoppel certificates from Cecilia Perez and United Way on the basis that they contained the pre-printed date of March 31, 2020. See Rutherford Decl., Ex. K

### C. Whether plaintiff properly extended the Closing Date pursuant to Section 4.7(d) of the PSA

While the estoppel delivery requirement and the Closing Date had initial respective deadlines of April 23, 2020 and April 27, 2020, the PSA contained provisions enabling either party to extend the deadlines under the agreement. Specifically, Section 4.7(d) provides in relevant part if "the Estoppel Delivery Requirement is not satisfied . . . then provided that Seller shall have been using commercially reasonable efforts to obtain the Tenant Estoppels (as required by Section 5.4(b) below), Seller shall not be in default hereunder . . . [and] either Seller or Purchaser shall have the right to extend the period for satisfying the condition set forth in this Section 4.7(d) (and, accordingly, the Closing Date) for the Extension Period in order to satisfy such condition." PSA, § 4.7(d). Section 5.4(b) in turn . Otherwise, however, the PSA does not define the term "commercially reasonable efforts."

As described above, on April 20, 2020, plaintiff notified defendant that it would exercise its right under Section 4.7(d) of the PSA to extend the Closing Date to May 6, 2020, for the purpose of satisfying the estoppel delivery requirement. Rutherford Decl., ¶ 22. Defendant objected to this extension on April 22, 2020, stating that it did not believe plaintiff was using "commercially reasonable efforts" to satisfy the estoppel delivery requirement. Id., ¶ 23.

The parties do not meaningfully address this issue in the briefing for this motion. Plaintiff states in passing that while "there is no reasonable dispute that Olive/Hill complied with the Estoppel Delivery Requirement by two business days before May 6, 2020 [the extended Closing Date] . . . for purposes of this motion, whether Olive/Hill had the right to extend the closing date is academic because undisputed facts show that Olive/Hill complied with the Estoppel Delivery Requirement by April 23, 2020." Mot. at 12 n. 1. Defendant likewise cursorily notes that "[f]or the sake of clarity and avoidance of doubt, the extent to which Olive/Hill exercised 'commercially reasonable efforts' to comply with the Estoppel Delivery Requirement and, in turn, validly extended the Closing Date is not at issue in the instant Motion." Opp. at 13 n. 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

It appears to the Court that under the applicable terms of the PSA, plaintiff was not entitled to extend the Closing Date unless it used "commercially reasonable efforts" to secure the estoppel certificates. Whether or not plaintiff used commercially reasonable efforts is a question of fact that at this juncture prevents the granting of summary judgment.

    **D.**     **Whether plaintiff's representations that tenants had become current on rent payments can be considered substantial compliance with the PSA**

Notwithstanding its contentions that all of the estoppel certificates are acceptable under the terms of the PSA, plaintiff argues that even if some of the estoppel certificates did allege an event of default by disclosing that a tenant was in arrears on rent at the time it signed the certificate, it was not a material breach to excuse defendant's contractual obligations because the late rent payments were ultimately paid and, in any event, constituted a de minimis amount. Mot. at 14–15. In opposition, defendant argues that whether or not plaintiff's breach is material is a question of fact precluding summary judgment. Opp. at 25.

In plaintiff's supplemental filing, it identifies several tenants, including Full Star Properties, the Lucas Museum, Simpson Gumpertz, and Steelcase, which plaintiff alleges had become current on rent payments, but for which plaintiff does not appear to have delivered revised certificates reflecting this development. See Dkt. 70.

Because the record does not show if these tenants did in fact become current on rent in April 2020, triable issues remain to determine whether these tenants should be considered to establish that plaintiff substantially complied with the PSA.

    **E.**     **Conclusion**

To recapitulate, the Court identifies the following tenant estoppel certificates:

*Estoppel certificates deemed acceptable*: As described above, during the course of the deal, SPC kept a list tracking any issues or questions it had with the tenant estoppel certificates. SPC did not list any issues or questions for the following tenant estoppel certificates delivered by April 23, 2020: 2U Inc., Abode Communities, Bank of Hope, COPE Healthcare, Fox Sports, Great Public Schools Now, Green Dot Public Schools, LBA Realty, Lynberg & Watkins, New Filmmakers, Swinerton Builders, Vorik Construction, WeWork, and USC (2009 and 2006 Leases). Rutherford Decl., ¶¶ 28, 31.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

The square footage of these acceptable leases is 366,236 square feet, which is roughly 44% of the property's total square footage.

*Estoppel certificates revised after initial closing date*: As described above, plaintiff delivered the four revised estoppel certificates for ABM, Girl Scouts, the City of LA, and USC's 2020 Lease which are otherwise acceptable on their face except for the Closing Date deadline issue. The total square footage of these four revised estoppel certificates is 271,000 square feet, which is roughly 32.5% of the property's total square footage.

*Pre-printed backdated estoppel certificates*: As stated above, if estoppel certificates with a pre-printed date of March 31, 2020 are acceptable, then any such certificate to which defendant only objected on that basis should be considered acceptable. The Court has identified the certificates from United Way and Cecilia Perez as falling into such category. The total square footage of these estoppel certificates is 35,655 square feet, which is roughly 4% of the property's total square footage.

*Tenants whose estoppel certificates were not revised but were represented to have become current on rent*: As described above, the estoppel certificates for Full Star Properties, the Lucas Museum, Simpson Gumpertz, and Steelcase could be found by a jury to constitute substantial compliance with the PSA, because even though the estoppel certificates indicate those tenants were in arrears, plaintiffs subsequently represented that those tenants became current in payment through April 2020. The total square footage of those certificates is 51,417 square feet, which is roughly 6% of the property's total square footage.

The Court concludes that there are triable issues of fact with respect to the latter three categories of tenant estoppel certificates. At the pre-trial conference set for January 9, 2023, the Court will hear oral argument as to whether it is appropriate to limit trial to these discrete issues, or whether there are additional issues to be tried.

## V.　　DEFENDANT'S AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Finally, plaintiff claims that it is entitled to summary judgment on defendant's affirmative defenses and counterclaims on the same factual basis it argues it is entitled to summary judgment on its claims for relief. Mot. at 16–17. Because the Court has concluded that there are several genuine disputes of material fact precluding summary judgment on plaintiff's claims, it likewise concludes that plaintiff is not entitled to summary judgment on defendant's defenses and counterclaims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:21-cv-02003-CAS (PDx) | Date | December 21, 2022 |
|---|---|---|---|
| Title | OLIVE/HILL STREET PARTNERS, LLC v. SPC OWNER LLC, ET AL. | | |

## VI. CONCLUSION

In accordance with the foregoing, the Court **DENIES** plaintiff's motion for summary judgment.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |